IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TYRONE HOUSTON,

                              Plaintiff,

          v.                              Civil Action No.
                                          9:03-CV-01412 (GTS/DEP)

GLENN S. GOORD, *et al.*,

                              Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

TYRONE HOUSTON, *pro se*
1677 Prospect Place
1st Floor
Brooklyn, NY  11233

FOR DEFENDANTS:

HON. ANDREW M. CUOMO          STEPHEN M. KERWIN, ESQ.
Attorney General of the       Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff Tyrone Houston, a former New York State prison inmate

who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983, *inter alia,* alleging violation of his civil rights.  In his complaint, plaintiff maintains that as a result of having been engaged in activity protected under the First Amendment to the United States Constitution, including filing grievances and commencement and pursuit of prior lawsuits, he was subjected by prison officials to a series of inter-prison transfers, the filing of false misbehavior reports, the imposition of unwarranted disciplinary confinement, and unfavorable program assignments.  Plaintiff also complains of the deprivation of outdoor exercise, contending that the denial represented cruel and unusual punishment, in violation of his rights under the Eighth Amendment. Plaintiff's complaint seeks both equitable relief and the recovery of compensatory and punitive damages.

Currently pending before the court is a motion filed on behalf of the defendants seeking the entry of summary judgment dismissing each of plaintiff's claims.  In support of their motion, defendants assert that certain of plaintiff's causes of action are procedurally barred, based upon his failure to exhaust available administrative remedies before filing suit, and that all of his claims are subject to dismissal on the merits, arguing that no

reasonable factfinder could conclude that he was subjected to unlawful retaliation or cruel and unusual punishment.  For the reasons set forth below, I recommend that defendants' motion be granted.

I.    BACKGROUND[1]

At the times relevant to his claims plaintiff Tyrone Houston, apparently also known as Tyrone Black, was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  Plaintiff's claims, which are expansive in terms of both their substantive breadth and the time period involved, arise from incidents occurring while he was confined in various facilities operated by the DOCS including, the Mid-State Correctional Facility, the Mohawk Correctional Facility, the Marcy Correctional Facility, the Great Meadow Correctional Facility, the Downstate Correctional Facility, the Auburn Correctional Facility, the Five Points Correctional Facility, the Cayuga Correctional Facility, the Elmira Correctional Facility, and the Ogdensburg Correctional Facility.

During the period of his incarceration, plaintiff filed a series of

---

[1]    In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

grievances and commenced suits against various prison workers.  Plaintiff

claims that as a direct result of that activity he experienced recrimination,

in the form of issuance of several false misbehavior reports, leading to

procedurally flawed disciplinary hearings and ensuing unlawful disciplinary

confinement in various facility special housing units ("SHUs").  Plaintiff

also attributes the various inter-prison transfers which he experienced,

including in October of 2000 to the Mohawk Correctional Facility in lieu of

a facility closer to his place of residence, to retaliatory animus, in further

response to his grievances and lawsuits.  Plaintiff additionally asserts that

while in disciplinary confinement, he was subject to a DOCS policy under

which SHU inmates are ineligible for participation in outdoor exercise.  As

a result, plaintiff was unable to participate in such outdoor activities for an

aggregate period of 222 days, extending intermittently from September of

2001 until mid-2003.[2]

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on November 21, 2003.  Dkt. No. 1.

As defendants, plaintiff's complaint names twenty-two present or past

employees of the DOCS including the agency's commissioner, Glenn S.

---

[2]    Each of these claims and their factual underpinnings will be discussed in more detail further on in this report.

4

Goord, as well as the Central Office Review Committee (the "CORC"),
which was sued as an entity, and asserts claims against the defendants in
both their individual and official capacities.[3]  *Id.*  Issue was joined by the
filing of answers on behalf of the majority of the defendants on September
30, 2005, and by defendant Dana C. Smith on November 28, 2005,
generally denying the material allegations of plaintiff's complaint and
interposing various affirmative defenses.  Dkt. Nos. 58, 60.

On January 4, 2008, following the completion of pretrial discovery,
defendants moved for summary judgment dismissing plaintiff's complaint
in its entirety.   Dkt. No. 80.  In their motion, defendants argue that
portions of plaintiff's claims are procedurally barred, based upon his failure
to exhaust available administrative remedies before commencing suit.
Addressing the merits, defendants assert that plaintiff's claims lack factual
support and that the record fails to contain evidence from which a
reasonable factfinder could conclude that the adverse actions attributed
by the plaintiff to retaliatory animus were in fact motivated by his protected
activity.  Defendants also contend that as a matter of law plaintiff's

---

[3]      Plaintiff's claim against the CORC, as well as those asserted against the
remaining defendants in their official capacities, were dismissed by order issued by
Senior District Judge Lawrence E. Kahn, on September 29, 2006(Dkt. No. 69), acting
on a report and recommendation issued by me on August 28, 2006.  Dkt. No. 67.

complaints regarding the denial of exercise do not implicate constitutional considerations.  Plaintiff has since responded in opposition to defendants' motion in papers filed with the court on February 1, 2008.  Dkt. No. 83.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[4]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

---

[4]     This matter was transferred from Judge Kahn to District Judge Glenn T. Suddaby on October 2, 2008.  *See* Dkt. No. 84.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).    When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is appropriately granted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Failure to Exhaust Remedies

In their motion defendants assert that, as a threshold matter, certain of plaintiff's claims are procedurally barred based upon his failure to exhaust available administrative remedies with regard to those claims.

With an eye toward "reduc[ing] the quantity and improv[ing] the

quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct.

983, 988 (2002), Congress altered the inmate litigation landscape

considerably through the enactment of the Prison Litigation Reform Act of

1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing

several restrictions on the ability of prisoners to maintain federal civil rights

actions.  An integral feature of the PLRA is a revitalized exhaustion of

remedies provision which requires that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct.

2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003,

at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the

dual purpose of affording "prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being

haled into courtl[,]" and to improve the quality of inmate suits filed through

the production of a "useful administrative record."  *Jones v. Bock,* 549

U.S. 199, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see*

*Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit.[5] *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).

"Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."

---

[5]     In their answers, defendants have included an affirmative defense alleging plaintiff's failure to satisfy his exhaustion obligation.  *See* Dkt. Nos. 58, ¶ 16 and 60, ¶ 16.

*Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[6]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.

---

[6]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

*Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the

facility next reviews the IGRC's determination and issues a decision.  *Id.* §

701.5(c).  The third level of the process affords the inmate the right to

appeal the superintendent's ruling to CORC, which makes the final

administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a

basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Without question the plaintiff, who by all accounts has frequently

availed himself of New York's IGP while in DOCS custody, has filed

grievances raising many of the issues forming the basis for his complaint

in this action.  The record now before the court, however, contains no

indication that this is true with regard to all of Houston's claims.  The only

grievance which plaintiff claims to have lodged addressing the question of

his many, allegedly retaliatory inter-prison transfers, for example, was filed

on March 17, 2003.  *See* Complaint (Dkt. No. 1) ¶ 46 and pp. 109-111.[7]

---

[7]      In support of their motion, defendants have offered a version of plaintiff's complaint, which is exceedingly comprehensive, together with the extensive exhibits

Accordingly, it does not appear that plaintiff has exhausted available administrative remedies with respect to inter-prison transfers effectuated after the filing of that grievance, including his transfers 1) on June 13, 2003, into the Riverview Correctional Facility; 2) on June 16, 2003, into the Gouverneur Correctional Facility; and 3) on August 15, 2003, into the Elmira Correctional Facility.  Similarly, there is no indication in the record now before the court that plaintiff's alleged denial of outdoor exercise covering the period from September 15, 2001 through November 21, 2001, forming the basis for a portion of plaintiff's cruel and unusual punishment claim, *see* Complaint (Dkt. No. 1) ¶ 47, was grieved.  While plaintiff did apparently file a grievance on July 29, 2003 regarding his confinement in the Gouverneur SHU beginning on June 17, 2003, *see* Complaint (Dkt. No. 1) at p. 120, there is no evidence of pursuit of that grievance through to completion.

In light of these failures and the fact that plaintiff has not offered any evidence which would indicate that the grievance procedure was not available to him or otherwise form a proper basis for excusing the

---

attached, all paginated for ease of reference.  *See* Kerwin Decl. (Dkt. No. 80-8) Exh. A. In this report and recommendation I will adopt defendants' pagination when citing to those materials.

grievance requirement, I recommend that the portions of plaintiff's claims

for which there was no grievance filed and pursued to completion be

dismissed on this procedural basis.[8]

## C.   <u>Retaliation</u>

Plaintiff's complaint centers principally upon his claim of retaliation,

_____

[8]       In his memorandum in opposition to defendants' motion, plaintiff alleges, for the first time, that certain prison officials, identified as defendants DeBejian and G. Molnar, interfered with his grievances out of retaliatory animus.  *See* Plaintiff's Memorandum (Dkt. No. 82) at pp. 11-12.  This conclusory statement draws no evidentiary support from the record,  and is not viewed by the court as sufficient to invoke the limited exceptions by the Second Circuit in its group of decisions issued in 2004.  *See, Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); and *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004).  I note, moreover, that whether the *Hemphill* test survives intact following the Supreme Court's decision in *Woodford v. Ngo,* 54 U.S. 81, 126 S. Ct. 2378 (2006), has been a matter of some speculation.  In one relatively recent decision a judge of another district within this Circuit concluded that at least the first two prongs of the *Hemphill* three part inquiry, requiring the court to assess whether administrative remedies were in fact "available" to prisoners and whether defendants should be estopped from raising the affirmative defense of non-exhaustion, retain continued vitality.  *Amador v. Superintendents of Dep't of Correctional Services,* No. 03 Civ. 0650 (KTD) (GWG), 2007 WL 4326747, at *6-7 (S.D.N.Y. Dec. 4, 2007). I note that another judge of this court has similarly concluded that

> it appears that these decisions have **not** been overruled. . . In [his] concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and Third Circuit, have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts(,) . . .,"

further buttressing the conclusion that the Second Circuit's *Hemphill* test retains vitality.  *Miller v. Covey*, No. 9:05-CV 649, 2007 WL 952054, at *3 (N.D.N.Y. Mar. 29, 2007) (*Emphasis in original*).

which is comprised of two discrete components.  First, plaintiff maintains that the issuance of various misbehavior reports, alleged by him to have contained false accusations, and resulting findings of guilt following disciplinary hearings, were prompted by his having engaged in protected activity, including the filing of grievances and lawsuits.  Additionally, plaintiff asserts that for the same retaliatory reasons he was excessively transferred among various prison facilities, including into some at remote locations from his place of residence.  In their motion, defendants contend that the record fails to disclose the basis upon which a reasonable factfinder could conclude that the adverse actions upon which plaintiff's retaliation claims hinge were in fact prompted by retaliatory animus.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach

such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that: 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff successfully shoulders this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and

16

improper reasons, state action may be upheld if the action would have

been taken based on the proper reasons alone.  *Graham v. Henderson*,

89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires thoughtful consideration

of the evidence presented concerning the protected activity in which the

inmate plaintiff has engaged and the adverse action taken against him or

her, as well as evidence tending to link the two.  When such claims, which

ordinarily are exceedingly case specific, are alleged in only conclusory

fashion, and are not supported by evidence establishing the requisite

nexus between any protected activity and the adverse action complained

of, the entry of summary judgment dismissing plaintiff's retaliation claims

is warranted.  *Flaherty*, 713 F.2d at 13.

It should also be noted that personal involvement of a named

defendant in any alleged constitutional deprivation is a prerequisite to an

award of damages against that individual under section 1983.  *Wright v.*

*Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of*

*Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).   As is true of

other types of claims, this principle applies to causes of action claiming

unlawful retaliation.  *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL

268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

1.   <u>False Misbehavior Report Claim</u>

In cases involving allegations of retaliation based on the filing of

allegedly false misbehavior reports, "[t]he difficulty lies in establishing a

retaliatory motive." *Barclay v. New York*, 477 F. Supp. 2d 546, 558

(N.D.N.Y. 2007).   Mere conclusory allegations of such retaliatory

motivation will not suffice to survive a summary judgment motion; to

establish retaliatory animus, which ordinarily must be shown

circumstantially since direct evidence of such motivation is typically

lacking, a plaintiff may cite such factors as "temporal proximity, prior good

discipline, finding of not guilty at the disciplinary hearing, and

statements by defendants as to their motives." *Id.* (citations omitted); *see*

*also Rivera v. Goord,* 119 F. Supp.2d 327, 339 (S.D.N.Y. 2000).

Plaintiff's complaint alleges the issuance of nine allegedly false

misbehavior reports, each authored by a different corrections officer,

between April 8, 2001 and June 9, 2003.  Complaint (Dkt. No. 1) ¶¶ 13 -

29.  In each instance plaintiff attributes the issuance to retaliatory motives,

citing different protected activity, as follows:

| Date of Issuance | Author | Alleged Protected Activity Precipitating Issuance | Disposition |
|---|---|---|---|
| 4/8/01 | Van Slyke | Submission of grievance dated 4/12/01 against Van Slyke's girlfriend, identified only as "SHU Counselor".[9] | Dismissed (no hearing held) |
| 8/15/01 | Elliott | Grievances filed on 8/9/01 and and 8/12/01[10] | Guilty (all counts) |
| 8/20/01 | Kelley | Filing of grievances (dates and content unspecified) | Guilty (two counts)/Not Guilty (one count) |

---

[9]       While the grievance for which plaintiff claims he was retaliated against in this count was filed on April 12, 2001, according to the exhibit attached to plaintiff's complaint, Houston contends that it was filed earlier and that there was a delay on the part of the IGRC in passing the complaint through for filing.  *See* Houston Aff. (Dkt. No. 82) ¶ 4.  While plaintiff's actual grievance complaints are annexed as exhibits in connection with other claims of retaliation, plaintiff did not include a copy of his handwritten grievance in this instance.  It should be noted, however, that the handwritten complaints filed in other instances and the resulting formal IGRC sheet all bear the same filing dates.  *See, e.g.,* Complaint (Dkt. No. 1) at pp. 19-21, 24-25, 59-61 and 116-18.

[10]      While plaintiff alleges having filed grievances on August 9, 2001 and August 12, 2001 against defendants Elliott and DeBejain, the record contains only the August 12, 2001 grievance.  *See* Complaint (Dkt. No. 1) at ¶ 15 and pp. 20-21. Additionally, although plaintiff claims that the resulting false misbehavior report was issued on August 15, 2001 by both defendants Elliot and DeBejain, the report contains only Elliot's signature.  *Id.* at p. 21.

| 8/23/01 | Wurst | Filing of grievances and lawsuits against defendant Wurst's "buddies at Mohawk" (dates and specifics not specified) | Guilty of all charges |
|---|---|---|---|
| 11/26/02 | Morse | Plaintiff "verbally complaining to [Morse's] supervisor about his racist behavior" (neither dates nor specifics provided) | Acquitted on all counts |
| 3/3/03 | Touron | "[Plaintiff's] exercise of freedom of information" (neither dates nor specifics provided) | Guilty on all counts |
| 3/22/03 | Shaver | Grievance filed on 3/12/03 | Guilty (two counts), Not Guilty (one count). |
| 5/29/03[11] | Hammill | Written complaint dated 5/29/03 to defendant Smith re: defendant Hammill [submitted by plaintiff] | Guilty (all counts) |
| 6/9/03 | Pirie | Pursuit of grievance appeal resulting in CORC decision dated 6/4/03 | Guilty (all counts); hearing result subsequently reversed on appeal to defendant Donald Selsky, Director of SHU/Inmate Disciplinary Program |

*Id.*

The only evidence offered by the plaintiff which could potentially support the finding of a nexus between an instance of protected activity alleged in his complaint and a corresponding misbehavior report is the inference to be drawn from the relevant chronology. It is true such an inference, flowing from a closeness in proximity between protected activity

---

[11]   Plaintiff contends that this misbehavior report was issued on May 30, 2003, but backdated by one day. *See* Complaint (Dkt. No. 1) ¶ 26.

and the issuance of a misbehavior report can in certain instances suffice

to avoid summary judgment dismissal of a retaliation claim.  *Colon v.*

*Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) citing *Flaherty v. Coughlin*, 713.

F.2d 10, 14 (2d Cir. 1983).   As defendants note, however, in many

circumstances this alone is insufficient to avoid summary judgment.

*Williams v. Goord,* 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000); citing *Ayers*

*v. Stewart*, 1996 WL 346049, at *1 (2d Cir. 1999); *see also Ethier v. City*

*of Cohoes*, No. 1:02 Civ. 1584, 2006 WL 1007780, *7 (N.D.N.Y. April 18,

2006).

　　　In this instance there are misbehavior reports issued which, taken in

isolation, could give rise to a determination by a reasonable factfinder that

the misbehavior report was issued in retaliation for protected activity.

Taken together and considered in the light of all relevant facts, however,

the record in this instance simply does not support the inference of such a

connection.  Prior to April of 2001, plaintiff had amassed a disciplinary

record which included twelve separate findings of guilt in connection with

alleged violations between October, 1993 and July, 27, 1999.  *See* Kerwin

Decl. (Dkt. No. 80-8) Exh. B.  The allegedly retaliatory misbehavior reports

now in dispute were issued over a two-year period by nine different

corrections workers, while plaintiff was incarcerated at four different prison facilities.  With the exception of defendant Hammill, each of the individuals authoring the subject misbehavior reports has submitted an affidavit expressly denying having done so prompted by retaliatory motivation.[12]  In seven of the nine instances, plaintiff was found guilty of at least some of the charges lodged, with an acquittal in one additional instance and one other misbehavior report having been dismissed for failure to conduct a timely disciplinary hearing.   Given the totality of these circumstances, no reasonable factfinder could conclude that the issuance of the various misbehavior reports and resulting findings of guilty was prompted by retaliatory animus.  I therefore recommend dismissal of this portion of plaintiff's retaliation claim.

## 2.   Prison Transfer Claim

The second aspect of plaintiff's retaliation claim concerns his frequent transfer among prisons.[13]  The record supports plaintiff's claim

---

[12]    No explanation is offered for the failure to include an affidavit for that defendant.

[13]    It should be noted that this is not the first time the plaintiff has had occasion to raise the claim of retaliation associated with this inter-prison transfers.  In another action also filed in 2003, in the Western District of New York, plaintiff's complaint included claims of retaliation based upon prison transfers; plaintiff's claims in that case were dismissed, on motion for summary judgment, by order issued by District Judge David G. Larimer.  *Houston v. ZenZen*, No. 03-CV-6118 L, (N.D.N.Y.

regarding the frequency of his prison transfers.  Plaintiff was transferred among various New York prisons thirteen times between May 7, 2001 and August 15, 2003, as set forth below:

| Date of Transfer | Transferee Facility |
| --- | --- |
| 5/7/01 | Mohawk Correctional Facility |
| 9/15/01 | Marcy Correctional Facility SHU |
| 11/21/01 | Downstate Correctional Facility SHU |
| 11/23/01 | Great Meadow Correctional Facility SHU |
| 11/27/01 | Downstate Correctional Facility SHU |
| 12/2/01 | Auburn Correctional Facility SHU |
| 12/5/01 | Five Points Correctional Facility |
| 7/11/02 | Cayuga Correctional Facility |
| 8/16/02 | Auburn Correctional Facility |
| 2/3/03 | Ogdensburg Correctional Facility |
| 6/13/03 | Riverview Correctional Facility |

---

September 26, 2005).  *See* Kerwin Decl. (Dkt. No. 80-8) Exh. M (Decision and Order). Significantly, among the defendants named in that action was defendant Knapp-David. *Id.*  It therefore could well be that plaintiff's claims in this action alleging retaliatory inter-prison transfer are barred by claim preclusion, or at the very least issue preclusion, based upon Judge Larimer's determination and the resulting judgment. *See Hill v. Coca Cola Bottling Co.,* 786 F.2d 550, 552-53 (2d Cir. 1986) and *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67 (1985).

6/17/03          Gouverneur Correctional Facility

8/15/03          Elmira Correctional Facility

Complaint (Dkt. No. 1) ¶¶ 7-10, 32-46; Knapp-David Aff. (Dkt. No. 80-22)

Exh. B.  Citing some specific instances of protected activity, plaintiff

alleges that all of these transfers were prompted by retaliatory motives on

the part of prison officials.  *See* Complaint (Dkt. No. 1), *id.*

Without question, prison officials retain significant flexibility and wide

discretion in managing the corrections system and placing inmates

appropriately.  *See* N.Y. Correction Law §§ 23, 72 and 112(1); *see also*

*Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir. 1996) *citing Meachum v.*

*Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 2538 (1976) (prisoner generally

has no due process right to challenge a transfer from one facility to

another).  As the Supreme Court has noted, New York's statute governing

prison transfers "imposes no conditions on the discretionary power to

transfer, and we are advised by the State that no such requirements have

been promulgated."  *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S. Ct.

2543 (1976).

While the discretion of prison officials to place and transfer prisoners

is broad, it is not unfettered; when such a transfer is made out of purely

retaliatory motivation, in response to constitutionally protected activity, a claim of unlawful retaliation under the First Amendment is established. *Meriwhether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989); *Hohman v. Hogan*, 597 F.2d 490, 492-93 (2d Cir. 1979).

In this instance plaintiff's allegations of retaliatory transfers appear to center upon defendants Knapp-David, LeClaire and Goord. *See* Complaint (Dkt. No. 1) ¶¶ 32, 35-42, 45 and pp. 18-19, 79-81, 88-89, 91-92, 94-95. Plaintiff apparently theorizes that these high ranking DOCS officials undertook a campaign of retaliatory transfers in order to punish him for his filing of grievances and lawsuits against various corrections workers assigned to the prison to which plaintiff was assigned.

In an affidavit given in support of defendants' motion, defendant Knapp-David, formerly the Director of Classification and Movement for the DOCS, explains the hub system implemented by the agency to designate the 63,500 inmates in the system and the process utilized to effectuate inmate transfers. Knapp-David Decl. (Dkt. No. 80-22) ¶¶ 2-7. That affidavit reflects that "transfers of inmates between hubs or transfer of maximum security inmates were approved and made by classification analysts on [Knapp-David's] staff when [she] was the Director of

25

Classification and Movement . . ..  As a routine matter [she] was not

personally involved in inmate transfer decisions."[14]  *Id.* ¶ 3.  In that

declaration defendant Knapp-David denies both having any retaliatory

motivation, and participating in the decisions to make the disputed

transfers.  *Id.*  Since personal involvement is a constitutional violation is a

pre-requisite to establishing liability, defendant Knapp-David is entitled to

dismissal on this basis.  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d

Cir. 1977).

Aside from his sheer conjecture, plaintiff has offered no evidence

from which a reasonable factfinder could determine that any of the cited

prison transfers were ordered out of retaliation for plaintiff's filing of

grievances and commencement of lawsuits, rather than resulting from

legitimate, penological considerations.  Given this and plaintiff's well

documented history of claiming retaliation in connection with many

_____

[14]     In her declaration, Knapp-David also explained that inmate transfers can be prompted by a number of factors, including required court appearances or the need for specialized medical treatment, additionally pointing out that on occasion when an inmate is moved between hubs, a transfer may include short term stays at various facilities along the way.  Knapp-David Decl. (Dkt. No. 80-22) ¶ 9.  Knapp-David further explained that this is the likely reason for certain transfers in rapid succession not necessarily reflected on plaintiff's inmate transfer history including, for example, the September 2001 transfer from Marcy to Great Meadow, with an intermediate stop at Downstate, and a return trip through Downstate with a final destination of Five Points, with only the Marcy to Five Points transfer having been noted on the plaintiff's transfer history.  *See* Knapp-David Decl. (Dkt. No. 80-22) ¶ 9 and Exh. B.

adverse actions taken against him overtime by prison officials, I conclude that the entry of summary judgment dismissing this portion of plaintiff's retaliation claim is also warranted.[15]

### D.    Cruel and Unusual Punishment

The last element of plaintiff's complaint is focused upon the alleged denial of the opportunity to engage in outdoor exercise while confined to S-Blocks and at Ogdensburg.  Complaint (Dkt. No. 1) ¶¶ 47-48. Defendants maintain that they are entitled to the entry of summary judgment dismissing this claim as well.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment

---

[15]    In a declaration given in support of defendants' motion, Attorney Stephen M. Kerwin, Esq. recounts his search for actions commenced by the plaintiff, revealing eleven civil cases commenced by Houston against DOCS employees, several of which include allegations of retaliation.  *See* Kerwin Decl. (Dkt. No. 80-8) ¶¶ 5, 9-11.

of those in confinement; thus the conditions of an inmate's confinement

are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S.

825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452

U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

must satisfy both an objective and subjective requirement – the conditions

must be "sufficiently serious" from an objective point of view, and the

plaintiff must demonstrate that prison officials acted subjectively with

"deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98,

111 S. Ct. 2321, 2323-2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385,

1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer,

M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.

Deliberate indifference exists if an official "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference."  *Farmer*, 511

U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing

*Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

28

Without question, prison inmates must be afforded a reasonable opportunity for exercise.  *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir. 1985); *see also Williams v. Greifinger,* 97 F. 3d 699, 704 (2d Cir. 1996) and *Sostre v. McGinnis,* 442 F.2d 178, 193 & n.25 (2d Cir. 1971)(en banc), *rev'd on other grounds, cert. denied Sostre v. Oswald*, 404 U.S. 1049, 92 S. Ct. 11190 (1972)*.*  Not every deprivation of this opportunity, however, rises to a level of constitutional significance; instead, to sustain an Eighth Amendment claim a plaintiff must show that he or she was denied of all meaningful exercise for a substantial period of time.  *See Davidson v. Coughlin,* 968 F. Supp. 121, 129 (S.D.N.Y. 1997).  When determining whether this showing has been made, a court may consider such relevant factors as 1) the duration of the deprivation; 2) its extent; 3) the availability of other out-of-cell activities; 4) the opportunity for in-cell exercise; and 5) the justification offered for the deprivation.  *See Williams v. Goord,* 111 F. Supp.2d 280, 291 (S.D.N.Y. 2000).

Plaintiff's exercise claim is comprised of two components.  First, he contends that when confined to an "S" block for disciplinary purposes he was not permitted to engage in outdoor exercise, but instead only permitted to exercise utilizing an outdoor recreation pen attached to his

cell.  *See* Complaint (Dkt. No. 1) ¶¶ 48 and p. 113.  Secondly, plaintiff asserts that he was confined to his cell for twenty-four hours each day between March 22, 2003 and April 4, 2003, pending a hearing at the Ogdensburg Correctional Facility, and thus denied any meaningful opportunity to exercise during that period.  (Dkt. No. 1) ¶ 49 and p. 116.

### 1.   "S" Block Confinement

While confined in facility SHU's, plaintiff was restricted to an exercise area measuring eight feet five inches in width, six feet nine inches in depth, and with the ceiling height of twelve feet seven inches. Complaint (Dkt. No. 1) ¶¶ 47-48; Prack Aff. (Dkt. No. 80-30) ¶ 5.  SHU exercise areas have three solid walls, with a fourth side made of woven rod security screen through which inmates can view the open surroundings.  Prack Aff. (Dkt. No. 80-30) ¶ 5.

The relevant portions of plaintiff's complaint and exhibits describe standard SHU conditions of confinement, which have been found to pass constitutional muster.  *See, e.g., Sostre v. McGinnis*, 442 F.2d at (outdoor exercise for one hour in small enclosed yard open to the sky consistent with Eighth Amendment); *Anderson,* 757 F.2d at 35) (holding that Eighth Amendment not violated when inmates confined to special housing unit

were allowed one hour per day of outdoor exercise - with no access to indoor exercise area); *Young v. Scully,* Nos. 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6769, 1993 WL 88144, at *5 (S.D.N.Y. March 22, 1993) (holding that Eighth Amendment was not violated when inmate was deprived of exercise for periods lasting  several days); and *Jordan v. Arnold*, 408 F. Supp 869, 876-877 (M.D. Pa. 1976) (holding that Eighth Amendment not violated when inmates confined to special housing unit were allowed two hours of exercise per week).  In this instance the court declines plaintiff's invitation to enter the arena of prison management, and instead recommends a finding that this portion of plaintiff's complaint fails to allege a cognizable constitutional deprivation.

### 2.    Denial of Exercise While at Ogdensburg

The second element of plaintiff's cruel and unusual punishment claim relates to the denial of exercise for a period of thirteen days while awaiting a disciplinary hearing.  *See* Complaint (Dkt. No. 1) ¶ 49 and p. 116.  In order to sustain a constitutional claim this cause of action must assert an "unquestioned and serious deprivation of basic human needs" or "depri[vation] of the minimal civilized measure of life's necessities. *Anderson*, 757 F.2d at 35.  The denial of exercise for a period of thirteen

31

days is, relatively speaking, *de minimis* and does not rise to a level sufficient to support a constitutional deprivation.  *See Young v. Scully,* 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6768 and 91 Civ. 6769, 1993 WL 88144, at *5 (deprivation of exercise over several days found to be *de minimis*); *Davidson v. Coughlin*, 968 F. Supp. 121, 128-131 (S.D.N.Y. 1997) (holding that "temporary and sporadic deprivations of outdoor activity [for no longer than fourteen days in a row] do not fall below the minimum standards of the Eighth Amendment"); *see also Trammell v. Keane,* 338 F.3d 155 (2d Cir. 2003); *Branham* v. *Meachum*, 77 F.3d 626, 630-31(2d Cir. 1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days does not violate the Eighth Amendment).

There appears to be another basis on which dismissal of this portion of plaintiff's complaint would be warranted.  The deprivation of exercise while in Ogdensburg does not appear to be attributed to subjective indifference on the part of any of the named defendants to plaintiff's well being, but instead was the result of a facility procedure at Ogdensburg which was later amended following plaintiff's successful grievance regarding the matter.  *See* Kurz Decl. (Dkt. No. 80-26) ¶ 9.  Under these circumstances plaintiff has failed to establish the subject deliberate

indifference on the part of any of the defendants toward his safety and well being. *Hathaway v. Coughlin,* 99 F. 3d 550, 554 (2d Cir. 1996) (charged official must act with sufficiently culpable state of mind that is equivalent to criminal recklessness); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The plaintiff, a frequent litigator and an inmate who over the period of his confinement with the DOCS accumulated an extremely poor disciplinary record, now complains alleging that nine misbehavior reports authored by nine separate corrections officers at four corrections facilities over a two year period, seven of which resulted of findings of guilt following disciplinary hearings, were issued out retaliatory motivation. Having carefully considered the record now before the court, I conclude no reasonable factfinder could agree that those misbehavior reports were issued for retaliatory purposes.  Plaintiff further claims that various inter-prison transfers which he experienced over time were retaliatory, in response to his having filed grievances and lawsuits.  Once again, the record fails to contain evidence from which a reasonable factfinder could draw this conclusion.  Finally plaintiff contends that he was subjected to

cruel and unusual punishment by the denial of adequate opportunities for exercise.  Having carefully reviewed the record, I conclude that no reasonable factfinder could determine that he was in fact subjected to cruel and unusual punishment.

For these reasons, and additionally because certain of his claims are procedurally barred based upon his failure to exhaust available administrative remedies, I recommend dismissal of plaintiff's complaint in its entirety.  It is therefore respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 80) be GRANTED, and that all plaintiff's claims in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:       March 11, 2009
             Syracuse, NY